## Vanover, et al. v. Meadors.

(Decided March 2, 1926.)

### Appeal from Whitley Circuit Court.

1. Vendor and Purchaser—Where Purchase of Land was in Gross, and Shortage was Not 10 Per Cent. of Land Sold, Equity would Not Grant Relief for Shortage.—Where land was purchased in gross, and alleged shortage was less than 10 per cent. of the land sold, equity would not grant purchaser relief for the shortage in suit on title bond by vendor.

2. Estoppel—Grantees Under Joint Deed, who Treated Deed as Mere Bond for Title, and who Thereafter Procured Separate Deeds for Separate Tracts to Themselves or Assignee, Held Estopped to Set up Any Claim Under Original Joint Deed.—M. and C., grantees under joint deed, who treated such joint deed as merely a bond for title, and who thereafter procured separate deeds to be made by vendor to M. and C.'s assignee, of separate tracts, were estopped to set up that latter separate conveyances were void in view of prior joint deed, and hence defendant in action on title bond, who purchased share of C.'s assignee, could not set up as defense any adverse claim of. M. or C.

R. L. POPE and R. C. BROWNING for appellants.

STEPHENS & STEELY for appellee.

Opinion of the Court by Judge McCandless—Affirming.

John L. Meadors sued J. B. Vanover in equity, to collect the balance of purchase money due under an executory contract or title bond for the sale of two small tracts of land. The defendant answered, alleging that the land was purchased by him and his son, A. L. Vanover, with the agreement and understanding that he was to pay for one tract and his son for the other, and that separate deeds should be made to each upon payment of his part of the purchase money; that no notes had been executed and by mutual mistake the title bond had been made to him alone. He further alleged that he had fully paid his one-half for the property, and was willing to accept a deed for his separate tract, but denied liability for any other or further sum. A. L. Vanover filed an interpleader, in which he alleged the same facts and admitted his indebtedness on the second tract of land, but alleged that the plaintiff had sold a part of this land since his purchase and that a portion of it was owned and held adversely by other parties. He asked that the contract be cancelled and prayed that otherwise the title be perfected.

The weight of the evidence is that prior to the sale of this land to Vanover, Meadors had sold both boundaries to Jess Early for the sum of $800.00; that Jess paid about the sum of $200.00, but became dissatisfied and wanted to leave and Meadors authorized him to procure another purchaser, which he did in the person of J. B. Vanover, who proposed to take the land, Jesse's crop and household and kitchen furniture for $900.00. Meadors agreed to this on the understanding that he was to get $800.00 for the land, this to be credited by the amount Jess had paid him. Vanover paid $350.00 down. Of this Jess received $300.00 and Meadors $50.00. The title bond was drawn by A. L. Vanover. There were some suggestions about the division of the land, and it was agreed that after the consideration was paid, if the Vanovers desired separate deeds, that Meadors would make them that way. True the Vanovers testify that each agreed to take a certain part, and to be individually liable therefor, but the other evidence does not sustain their contention, at any rate it is not of such a convincing character as to authorize a cancellation for mutual mistake. (2) It is further claimed that the title bond calls

for 126 acres, and that there is a shortage of 10 or 15 acres. There is a controversy as to whether these figures were in the bond at the time it was executed; but, passing that, it does not appear that this alleged shortage is ten per cent of the land sold, and as the evidence clearly indicates that the purchase was in gross, defendants are not entitled to relief for a shortage. Aside from this there is no equity in this claim, as is explained in the third paragraph *infra*. (3) It is said, however, that some of the boundary conveyed is in the adverse possession of other parties under color of superior title. In this respect it appears that the second tract of land was conveyed to Meadors by I. N. Steely; it is one of two boundaries that had theretofore been contracted by Steely to Mildred and Charlie Early; Meadors took over Charlie Early's part. Mildred Early desired to reach the creek, and the two agreed on a division of the lands, by which a conditional line was drawn, giving to Mildred about twenty acres of rough bluff land, covered with ivy, in exchange for about one-half that amount of better land. This was prior to the sale to defendants, and the conditional line was pointed out to them by Jess Early at the time of the purchase and was fully understood by them, and the title bond as drawn by A. L. Vanover calls for this conditional line. It is also claimed that one Jarvis Richardson had enclosed about one-half an acre of the lands covered by the title bond; but it is clearly in evidence that this was pointed out to defendants at the time of the purchase, and it was understood that it did not pass, and its value is shown to be so insignificant as not to affect the transaction. The fourth contention is that the plaintiff has sold to the county a spot of ground twelve feet square for a voting place. It appears that the plaintiff received no consideration for this, but by consent of defendants this small house was erected on the lands on the condition that when it ceased to be used as a voting place the defendants were to have the benefit of it.

A question not raised in the pleadings but argued from the evidence is that Steely conveyed all his interest in the land in question to Charlie and Mildred Early jointly, and that the subsequent deeds made by him to Mildred Early and J. L. Meadors separately, conveyed no title. It does appear that Steely executed a joint deed to Mildred and Charlie for the boundary of land, with a stipulation endorsed thereon that upon a division

between them he would make separate deeds to each; that a division was agreed upon, and that by their written endorsement on that deed, Mildred and Charlie directed Steely to execute deeds in accordance with that stipulation to Mildred Early and to J. L. Meadors, as assignees of Charlie, and this was done. It does not clearly appear whether the original deed was ever delivered, the parties treating it as a title bond; at any rate Mildred and Charlie are clearly estopped from ever claiming any interest in this property.

Wherefore, perceiving no error, the judgment is affirmed.